FILED

2008 DEC 24 PM 1:51

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
(Fort Myers Division)

SCOTT A. SIEGEL,

    Plaintiff,

v.

THE RESIDENCES AT COCONUT
POINT, LLC, an Indiana limited liability
company,

    Defendant.
_____/

Case No.: 2:08-cv-960-FtM-99SPC

## COMPLAINT

Plaintiff, Scott A. Siegel, by and through his undersigned attorneys, hereby sues Defendant, The Residences at Coconut Point, LLC, and states as follows:

### VENUE AND JURISDICTION

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 since the Plaintiff has asserted a claim based upon violations of the Interstate Land Sales Full Disclosure Act (the "ILSFDA"), 15 U.S.C. § 1701 *et seq.*

2. This Court has jurisdiction over the state claims set forth herein pursuant to the Court's supplemental jurisdiction under 15 U.S.C. 1367.

3. Venue is proper under 28 U.S.C. § 1391(b) and M.D. Fla. L.R. 1.02(c) in the United States District Court for the Middle District of Florida, Fort Myers Division, because a substantial part of the relevant events forming the basis for this lawsuit, including the offer to sell land subject to the provisions of the ILSFDA, occurred in this

judicial district and division, the real property at issue herein is located within this judicial district and division, and the Defendant transacts business within this judicial district and division.

4. Defendant has submitted itself to the personal jurisdiction of this Court by virtue of being authorized to do business in the State of Florida, and or maintaining substantial contacts and business presence in the Sate of Florida, including the acts and omissions upon which this Complaint is predicated.

## THE PARTIES

5. Plaintiff, Scott A. Siegel ("Siegel"), is an individual and resident of Orange County, Florida.

6. Defendant, The Residences at Coconut Point, LLC ("Coconut Point"), is an Indiana limited liability company which is duly authorized and qualified to do business within the State of Florida, and is a "developer" within the meaning of the ILSFDA, 15 U.S.C § 1701(5).

## RELEVANT FACTS

7. On or about December 28, 2005, Siegel entered into a Condominium Sale and Purchase Agreement (the "Agreement") with Coconut Point for Unit 209, Building 4 (the "Unit") at the Residences at Coconut Point III, a Condominium. A true and accurate copy of the Agreement is attached hereto as Exhibit "A".

8. Pursuant to the terms of the Agreement, Siegel delivered to Coconut Point deposits totaling the aggregate sum of Ninety Two Thousand Seven Hundred Fifty and No/100 Dollars ($92,750.00), plus an additional deposit of Three Thousand Five Hundred

Twenty Five and No/100 Dollars ($3,525.00) for upgrades to the Unit (collectively the "Deposits").

9. At all times material to this action and the proposed transaction that is the subject of the Agreement, Siegel did not engage in the business of constructing residential, commercial, or industrial buildings.

10. Siegel did not execute or enter into the Agreement for the purpose of engaging in the business of constructing residential, commercial, or industrial buildings.

11. Siegel did not execute or enter into the Agreement for the purpose of reselling or leasing the Unit to persons engaged in the business of constructing residential, commercial, or industrial buildings.

12. At least $46,250.00 of Siegel's Deposits remain in the possession of Coconut Point's designated escrow agent, First Title of Southwest Florida.

13. In a letter dated February 28, 2008, Siegel informed Coconut Point that the Agreement violated the ILSFDA and further notified Coconut Point that he was requesting the return of his Deposits.

14. Coconut Point has failed or refused to return Siegel's Deposits and has otherwise failed or refused to provide an adequate remedy for Siegel's damages.

15. Siegel has retained the undersigned counsel to represent him in this action and is obligated to reimburse the firm its costs and to pay the firm a reasonable fee for its services.

16. All conditions precedent to the claims set forth in this Complaint have been met or otherwise been waived.

## COUNT I
### (Violation of 15 U.S.C. § 1703(a))

17. Siegel re-alleges and incorporates by references all of the allegations set forth in paragraphs 1 through 16 of the Complaint as though fully set forth herein.

18. This cause of action is brought pursuant to 15 U.S.C. § 1709(a) to recover from Coconut Point all available equitable and legal remedies, attorneys fees, interest, costs and such other relief as this Court deems fair, just, and equitable.

19. The sale of the Unit to Siegel was not exempt under 15 U.S.C. § 1702.

20. Siegel was never provided with a printed "property report" as such term is used in 15 U.S.C. § 1701 *et seq.*

21. A "statement of record", as such term is used in 15 U.S.C. § 1701 *et seq.*, was never filed with the United States Department of Housing and Urban Development with respect to the Unit Coconut Point was attempting to sell to Siegel.

22. 15 U.S.C. § 1703(a)(1)(A) provides, in pertinent part, that with respect to the sale of a unit not exempt under 15 U.S.C. § 1702, it shall be unlawful for any developer or agent, directly or indirectly, to sell a unit unless a statement of record has been filed in accordance with the requirements set forth in 15 U.S.C. § 1706.

23. 15 U.S.C. § 1703(a)(1)(B) provides, in pertinent part, that with respect to the sale of a unit not exempt under 15 U.S.C. § 1702, it shall be unlawful for any developer or agent, directly or indirectly, to sell a unit unless a printed property report, meeting the requirements set forth in 15 U.S.C. § 1707 has been provided to the purchaser in advance of the signing of any contract by the purchaser.

24. Coconut Point is a "developer" as that term is defined in 15 U.S.C. § 1701(5).

25. Coconut Point's failure to provide a property report to Siegel and Coconut Point's failure to file a statement of record are material violations of 15 U.S.C. § 1703(a).

26. Siegel has been damaged by Coconut Point's material violations of 15 U.S.C. § 1703(a) because, among other losses incurred by Siegel, he has been deprived of his Deposits.

WHEREFORE, Plaintiff respectfully requests that in accordance with the remedies specified under 15 U.S.C. § 1709(a), this Court enter judgment finding the Defendant, Coconut Point, liable to Plaintiff for his damages and award such other relief, including costs and attorneys fees, as this Court deems fair, just, and equitable.

## COUNT II
### (Violation of 15 U.S.C. § 1703(c))

27. Siegel re-alleges and incorporates by references all of the allegations set forth in paragraphs 1 through 16 of the Complaint as though fully set forth herein.

28. This cause of action is brought pursuant to 15 U.S.C. § 1709(b) to recover from Coconut Point all available equitable and legal remedies, attorneys fees, interest, costs and such other relief as this Court deems fair, just, and equitable.

29. The Agreement and Coconut Point's offer to sell the Unit to Siegel is subject to the proscriptions of the ILSFDA.

30. Coconut Point did not file a "statement of record" for its condominium development with the United States Department of Housing and Urban Development, as required of Coconut Point under the ILSFDA.

31. Coconut Point did not provide Siegel with a "property report", as such term is used in 15 U.S.C. § 1701 *et seq*.

32. The sale to Siegel contemplated under the Agreement does not qualify for exemption under 15 U.S.C. § 1702(a)(7).

33. Coconut Point attempted, but failed, to qualify its sale to Siegel under the exemption set forth at 15 U.S.C. § 1702(a)(2).

34. In order to qualify for exemption under 15 U.S.C. § 1702(2), a developer must obligate itself to substantially complete construction of the unit it has offered for sale within two years from the date that the purchaser executes a sales agreement. Additionally, the developer cannot limit the purchaser's remedies to seek redress for a developer's breach nor may the developer utilize 15 U.S.C. § 1702(a)(2) for the purposes of evading the provisions of the ILSFDA.

35. The sales agreements used by Coconut Point to sell condominium units at the Residences at Coconut Point III were not exempt under 15 U.S.C. § 1702(2), as established by the *Opinion and Order* entered by this Court on July 10, 2008, against Coconut Point in Case No. 2:07-cv-797-FtM-29SPC, in the matter of *Van Hook v. Residences at Coconut Point, LLC*.

36. In the Agreement, Coconut Point failed to sufficiently obligate itself to complete construction of the Unit within two years of the date Siegel executed the Agreement by, among other things, improperly qualifying its obligations to complete construction of the Unit within two years and by improperly limiting Siegel's remedies in

the event Coconut Point failed to fulfill its obligations to complete construction of the Unit within two years.

37. Among the provisions of the Agreement which evidence the illusory nature of Coconut Point's promise to construct the Unit offered to Siegel are paragraphs 3(d), 14, and 21 of the Agreement. Additionally, paragraph 3(d) of the Agreement expressly limits Siegel's remedies in a manner which renders the sale to Siegel illusory.

38. Paragraph 3(d) of the Agreement, in pertinent part, provides as follows:

> (d) Completion Date. Seller anticipates Units will be substantially completed by the estimated date of within two (2) years of the date of this Agreement, but Buyer understands and agrees that Seller cannot guarantee substantial completion by that date. Seller will not be liable for any delays and Seller will not have to make, provide or compensate Buyer for any accommodations or costs as a result of any delays, and any delays will not permit Buyer to cancel, amend, or diminish any of Buyer's obligations. Notwithstanding the foregoing, however, Seller agrees to substantially complete construction of the Unit in the name specified in this Agreement, by a date no later than two (2) years from the date that Buyer signs this Agreement, subject, however only to delays caused by matters which are legally recognized as defenses to contract actions in the jurisdiction where the Unit is being constructed.

39. Paragraph 14 of the Agreement, in pertinent part, provides as follows:

> 14. <u>GOVERNING LAW</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida. Venue for any action, litigation or proceeding arising out of or concerning this Agreement shall be in Lee County, Florida, and the parties expressly waive their right to venue elsewhere.
>
> It is Seller's and Buyer's mutual desire and intention that all provisions of the Agreement be given full effect and be enforceable strictly in accordance with their

terms. If, however, any part of this Agreement is not enforceable in accordance with its terms or would render other parts of this Agreement or this Agreement in its entirety unenforceable, the unenforceable part or parts are to be judicially modified, if at all possible, to come as close as possible to the expressed intent of such part or parts and still be enforceable without jeopardy to other parts of this Agreement, or this Agreement in its entirety, and then are to be enforced as so modified. If the unenforceable part or parts cannot be so modified, such part or parts shall be considered null and void in order that the mutual paramount goal that this Agreement is to be enforced to the maximum extent possible strictly in accordance with its terms can be achieved.

Without limiting the generality of the foregoing, if the mere inclusion in this Agreement of language granting to Seller certain rights, remedies and powers, or waiving or limiting any of Buyer's rights, remedies or powers or Seller's obligations, results in a final determination (after giving effect to the above judicial modification, if possible) that Buyer has the right to cancel this Agreement and receive a refund of Buyer's Deposits, such offending rights, powers, limitations and/or waivers shall be struck, cancelled, rendered unenforceable, ineffective and null and void. Under no circumstances shall either Buyer or Seller have the right to cancel this Agreement solely by reason of the inclusion of certain language in this Agreement, unless the expressed purpose of that language is to grant a right of cancellation.

The following sentence will supersede and take precedence over anything else in this Agreement which is in conflict with it: If any provisions serve to limit or qualify Seller's substantial completion obligation as stated in paragraph 3, Buyer's remedies in the event that such obligation is breach, or grant Seller an impermissible grace period, and such limitations or qualifications are not permitted if the exemption of this sale from the Interstate Land Sales Full Disclosure Act pursuant to 15 U.S.C. § 1702(a)(2) is to apply or this Agreement is to otherwise be fully enforceable, then all those provisions are hereby stricken and made null and void as if never a part of this Agreement. For purposes of this paragraph only, the words

"this Agreement" include in their meaning the Condominium Documents.

40. Paragraph 21 of the Agreement, in pertinent part, provides as follows:

> 21. <u>LIABILITY FOR CASUALTY LOSS</u>. If the Condominium Unit is damaged by fire or other casualty after date of this Agreement, but prior to closing, then Seller shall have the right to decide whether or not to repair the Unit. ...
>
> In the event Seller ... decides to repair the damage, then-Seller ... shall have a reasonable time to complete repairs. Any such repair work will be judged by the same standards used to evaluate new construction. In the event of the foregoing, Buyer shall not have any right to a reduction in the Total Purchase Price, nor have any claim against Seller ..., and Buyer agrees to accept title on the scheduled Closing Date (provided the repairs are finished by the Closing Date). ... If Seller ... decides not to repair the damage, then, and in that event, this Agreement shall be cancelled and all Deposits shall be returned to Buyer, and the parties shall be relieved of all further obligations, one unto the other. Notwithstanding anything to the contrary contained hereinabove, in the event Unit is damaged by casualty prior to closing, Seller may elect not to repair, and to terminate this Agreement.

41. Coconut Point, in paragraph 3(d) of the Agreement, expressly disclaims any guarantee to substantially complete construction within two years and expressly disclaims all liability for delay damages caused by its failure to complete construction within two years.

42. The inclusion in the Agreement of, among other provisions, paragraph 14 evidences the fact that the Agreement fails to comply with the ILSFDA.

43. Paragraph 14 of the Agreement is void under 15 U.S.C. § 1712 by virtue of the fact that it seeks to waive compliance with the ILSFDA.

44. By failing to sufficiently obligate itself to complete construction of the Unit within two years, and by negating Siegel's right to remedy a breach by Coconut Point, Coconut Point's agreement to sell to Siegel is not exempted from the ILSFDA's requirements.

45. Since Coconut Point does not qualify for exemption from the ILSFDA, it was required to provide Siegel with a property report in accordance with the ILSFDA.

46. Coconut Point failed to provide Siegel with a property report in violation of 15 U.S.C. § 1703(a) and failed to provide Siegel with notice of his right to revoke the Agreement as required by 15 U.S.C. § 1703(c).

47. Pursuant to 24 C.F.R. § 1710.209(f)(3)(i), Coconut Point was required to include a specific notice provision in the Agreement, in bold typeface, alerting Siegel to the fact that in the event he was not provided a property report that he had two years from the date of signing the Agreement within which to cancel the Agreement. Coconut Point failed to include this required notice provision in the Agreement.

48. Coconut Point's failure to properly comply with the notice requirements of 15 U.S.C. § 1703(c) and 24 C.F.R. § 1710.209(f)(3)(i) have resulted in Siegel being damaged for, among other things, the loss of his Deposits.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court, in accordance with the remedies specified under 15 U.S.C. § 1709(b), enter judgment finding the Defendant, Coconut Point, liable to Plaintiff for his damages and award such other relief, including costs and attorneys fees, as this Court deems fair, just, and equitable.

## COUNT III
### (Violation of Florida Deceptive and Unfair Trade Practices Act)

49. Siegel re-alleges and incorporates by references all of the allegations set forth in paragraphs 1 through 48 of the Complaint as though fully set forth herein.

50. As set forth in Counts I and II above, Coconut Point has violated certain provisions of the ILSFDA.

51. The violation of any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices constitutes a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). *See* FLA. STAT. § 501.203(3)(c) (2008).

52. The federal courts have held that the ILSFDA generally proscribes certain unfair and deceptive trade practices.

53. Coconut Point's violations of the ISLFDA, as set forth above in Counts I and II of this Complaint, each constitute *per se* violations of FDUTPA under Florida Statute § 501.203(3).

54. Coconut Point's failure to properly comply with the ILSFDA and its resulting violation of the FDUTPA have resulted in Siegel being damaged for, among other things, the loss of his Deposits.

55. In accordance with § 501.2105, Florida Statutes, Siegel is entitled to recover from Coconut Point his reasonable attorney's fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment finding the Defendant, Coconut Point, liable to Plaintiff for his damages and

the payment of interest, costs and attorney fees of this action together with all other relief the Court deems just and proper.

### COUNT IV
### (Rescission pursuant to the Agreement and Chapter 718, Florida Statutes)

56. Siegel re-alleges and incorporates by references all of the allegations set forth in paragraphs 1 through 16 of the Complaint as though fully set forth herein.

57. Pursuant to § 718.503(1)(b) and § 718.504, Florida Statutes, Coconut Point was obligated to provide Siegel with a prospectus or disclosure statement which complied with the requirements of § 718.504, Florida Statutes.

58. Sometime after October 18, 2007, Coconut Point sent Siegel an amendment to the condominium prospectus, entitled *Supplemental Prospectus October 18, 2007*.

59. On or about March 4, 2008, Coconut Point sent an additional supplement to the prospectus, entitled *Amendment to October 18, 2007 Supplement to Prospectus As Approved January, 2008*, which supplement only contained page "P-4" of the prospectus.

60. Coconut Point's *Amendment to October 18, 2007 Supplement to Prospectus As Approved January, 2008* contained certain disclosures required to be given by Coconut Point to Siegel, pursuant to § 718.504(11)(d), Florida Statutes, concerning the compensation of the condominium's management company, which disclosures Coconut Point had previously failed to provide in its *Supplemental Prospectus October 18, 2007*.

61. The disclosures made by Coconut Point, in its *Amendment to October 18, 2007 Supplement to Prospectus As Approved January, 2008*, concerning the

compensation of the condominium's management company, materially alters or modifies the offering in an manner that is adverse to Siegel.

62. § 718.504(1)(b)1-3, Florida Statutes, provides that the prospectus or offering circular required to be furnished by the developer to the condominium purchaser must contain the following statements in conspicuous type, on the front cover or the first page of the prospectus:

> 1. **THIS PROSPECTUD (OFFERING CIRCULAR) CONTAINS IMPORTANT MATTERS TO BE CONSIDERED IN ACQUIRING A CONDOMINIUM UNIT.**
>
> 2. **THE STATEMENTS CONTAINED HEREIN ARE ONLY SUMMARY IN NATURE. A PROSPECTIVE PURCHASER SHOULD REFER TO ALL REFERENCES, ALL EXHIBITS HERETO, THE CONTRACT DOCUMENTS AND SALES MATERIALS.**
>
> 3. **ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF THE DEVELOPER. REFER TO THIS PROSPECTUS (OFFERING CIRCULAR) AND ITS EXHIBITS FOR CORRECT REPRESENTATIONS.**

63. § 718.504(2) Florida Statutes, provides that the prospectus or offering circular required to be furnished by the developer to the condominium purchaser must include a summary on the page following the front cover or first page of the prospectus, which summary must contain all statements required to be in conspicuous type in the prospectus or offering circular.

64. Coconut Point has failed to substantially comply with § 718.503(1)(b) and § 718.504, Florida Statutes, by failing to include in its prospectus the statements required

to be in conspicuous type under § 718.504(1)(b)1-3, Florida Statutes, and by failing to include in its prospectus the summary with all statements required to be in conspicuous type, as required by § 718.504(2) Florida Statutes.

65. Coconut Point's failure to properly comply with the disclosure requirements of §§ 718.504(1)(b)1-3, 718.504(2), and 718.504(11)(d), Florida Statues, has resulted in Siegel being damaged for, among other things, the loss of his Deposits.

66. On or about March 18, 2008, less than 15 days after receiving the *Amendment to October 18, 2007 Supplement to Prospectus As Approved January, 2008* from Coconut Point, Siegel exercised his right to revoke the Agreement pursuant to § 718.503, Florida Statutes, by providing written notice to Coconut Point. Siegel's written notice also made demand for the return of the Deposits.

67. Siegel is entitled to a full refund of the Deposits, together with all interest earned thereon, pursuant to § 718.202, Florida Statutes.

68. The Agreement also provides the following language in capitalized, bold typeface:

> **THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN FIFTEEN (15) DAYS AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER, AND RECEIPT BY BUYER OF ALL OF THE ITEMS REQUIRED TO BE DELIVERED TO HIM OR HER (BUYER) BY THE DEVELOPER (SELLER) UNDER SECTION 718.503, FLORIDA STATUTES. THIS AGREEMENT IS ALSO VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN FIFTEEN (15) DAYS AFTER THE DATE OF RECEIPT FROM THE DEVELOPER**

> (SELLER) OF ANY AMENDMENT WHICH MATERIALLY ALTERS OR MODIFIES THE OFFERING IN A MANNER THAT IS ADVERSE TO THE BUYER. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN FIFTEEN (15) DAYS AFTER THE BUYER HAS RECEIVED ALL OF THE ITEMS REQUIRED. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.

69. Coconut Point has failed or refused to return Siegel's Deposits and has otherwise failed or refused to provide an adequate remedy for Siegel's damages.

WHEREFORE, Siegel demands judgment against Coconut Point rescinding the Agreement and awarding the return of the Deposits, together with prejudgment interest, attorney's fees, taxable costs and such other relief as this Honorable Court deems just and proper.

Respectfully submitted,
SCOTT A. SIEGEL
By his attorneys

MARCHENA AND GRAHAM, P.A.

By: /s/ Juan Carlos B. Gomez
Juan Carlos B. Gomez
Florida Bar No.: 0027821
(TRIAL COUNSEL)
Marchena and Graham, P.A.
976 Lake Baldwin Lane, Suite 101
Orlando, Florida 32814
Phone: (407) 658-8566
Fax:    (407) 281-8564
E-Mail: jcgomez@mgfirm.com